IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01013-RBJ

HANOVER INSURANCE GROUP, a subrogee of KTB Inc., doing business as Navis Pack &
Ship Center and
CINCINNATI INSURANCE COMPANY, as subrogee of Window Technology Inc.,
doing business as Wintech, Wintech Real Estate, LLC,

        Plaintiff,

v.

ICARPETS, INC.,

        Defendant,

VEHICLE PROJECTS, INC.,

        Plaintiff-Intervenor.

---

## ORDER ON PENDING MOTIONS

---

        This matter is before the Court on four motions: iCarpets' motions for partial summary

judgment on Vehicle Projects' breach of contract claim and on the measure of damages [ECF

Nos. 26, 27]; and Vehicle Projects' motions for summary judgment and for sanctions [ECF Nos.

28, 29]. For the reasons stated herein, the Court GRANTS iCarpets' first motion for partial

summary judgment on Vehicle Projects' breach of contract claim; GRANTS in part and DENIES

in part iCarpets' motion for partial judgment with respect to the measure of damages; GRANTS

in part and DENIES in part Vehicle Projects' motion for summary judgment with respect to

liability and causation, and GRANTS in part and DENIES in part Vehicle Projects' motion for

sanctions.

## BACKGROUND

The plaintiffs, Hanover Insurance Group and Cincinnati Insurance Company, are the subrogees of Navis Pack & Ship Center and Wintech, Wintech Real Estate, LLC, respectively. Both Navis and Wintech leased units in a commercial property in Denver, Colorado. iCarpets was also a tenant in the commercial property. It stored carpets in its warehouse unit adjacent to Navis' unit. In December 2014 a fire originating in iCarpets' unit damaged both Navis' and Wintech's property. On Navis' and Wintech's behalf, Hanover and Cincinnati brought this suit alleging claims of negligence and breach of contract against iCarpets. Hanover and Cincinnati brought their breach of contract claims as third-party beneficiaries of iCarpets' lease agreement with the commercial landlord, Revere Limited Partnership I, LLLP.

Plaintiff-Intervenor Vehicle Projects also alleges that its property was damaged in the December 2014 fire. Vehicle Projects was subleasing space from Navis in the commercial property at the time of the fire and suffered property damage to the specialized equipment it was storing in the unit. Vehicle Projects' motion to intervene was granted (ECF No. 12), and it filed its complaint in this suit in September 2016. ECF No. 14. Vehicle Projects' complaint, like that of Hanover and Cincinnati, alleges claims of negligence and breach of contract as a third-party beneficiary of iCarpets' lease agreement with Revere. *Id.* at 4.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A

fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing An*derson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## ANALYSIS

### A.     iCarpets' Motion for Partial Summary Judgment on Vehicle Projects' Breach of Contract Claim [ECF No. 26].

As noted, Hanover, Cincinnati, and Vehicle Projects all allege breach of contract claims as third-party beneficiaries of iCarpets' lease agreement with Revere. *See* ECF No. 1 at 7, 9; ECF No. 14 at 4. A third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Everett v. Dickinson & Co.*, 929 P.2d 10, 12 (Colo. App., 1996) (citing *McPheeters v. McGinn, Smith & Co.*, 953 F.2d 771 (2d Cir. 1992)). Courts assessing parties' intent to confer benefits on third parties consider the contractual provisions "together with the circumstances surrounding the execution of the agreement." *Id.* at 13. A "third party beneficiary need not be named in a contract in order to sue under the contract." *Ratner v. MRC P'ship*, 156 F.2d 1244, 1998 WL 567972, at *6, (10th Cir. 1998) (unpublished).

In this case, the plaintiffs and plaintiff-intervenor focus on the requirement in iCarpets' lease agreement that iCarpets "keep and maintain the leased premises in good condition and repair," "not take actions to endanger other tenants in the subject property," and "keep the

electrical system in working order."  ECF No. 1 at 9; *see also* ECF No. 26-2 at 2 ("Tenant shall not . . . take any other action which would constitute a nuisance or would disturb or endanger any other tenants in the building.").  iCarpets moves for summary judgment on Vehicle Projects' breach of contract claim, alleging that as a sublessee of space in Navis' unit, Vehicle Projects does not have standing to bring a breach of contract claim against iCarpets as a third-party beneficiary.  ECF No. 26 at 6.

iCarpets' argument relies on both its lease agreement with Revere and Vehicle Projects' sublease agreement with Navis, which it argues preclude Vehicle Projects' third-party beneficiary claims.  ECF No. 26 at 2–4.[1]  iCarpets' argument that the sublease agreement between Navis and Vehicle Projects waives claims by Vehicle Projects against Navis is inapposite.  *Id.* at 4–5, 7.  Vehicle Projects is circumventing its relationship with Navis and suing iCarpets in its own right as a third-party beneficiary, relying only on iCarpets' lease agreement with Revere.  I am similarly not persuaded by iCarpets' arguments that sublessees may not be third-party beneficiaries.  *See* ECF No. 26 at 6.  The lease agreement's prohibition on sublessees without Revere's approval does not support iCarpets' contention that Vehicle Projects—or any other sublessees, for that matter—were not contemplated by the lease agreement or intended to benefit thereby.  Instead, because this provision in fact anticipates sublessees, it would not be unreasonable for the parties to have intended to extend to sublessees the same protections that tenants enjoy.  *See, e.g.*, ECF No. 26-2 at 2, 3.

However, I am persuaded by iCarpets' argument that the waiver clause in iCarpets' lease agreement with Revere precludes Vehicle Projects' third-party claims.  *Id.* at 7.  Under

---

[1] Although the parties do not dispute that Vehicle Projects was subleasing space from Navis (*see, e.g.*, ECF No. 14 at 1; ECF No. 26 at 2), the Court notes that the purported "sub-lease" agreement instead is labeled as a "Universal Shipping Agreement and Release."  ECF No. 26-3.  Regardless, because the parties do not dispute that Vehicle Projects was subleasing space from Navis to store its goods, the Court will accept this contention as undisputed for the purposes of the motion for partial summary judgment.

"traditional principles of contract interpretation . . . third-party beneficiaries generally have no greater rights in a contract than does the promisee." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 375 (1990).  In this case the "Waiver of Subrogation" section of the lease agreement provides that "Landlord and Tenant hereby release each other from any loss or damage to property caused by fire or any other perils insured through or under them by way of subrogation." *Id.* at 7.  As a result, even if Vehicle Projects were a third-party beneficiary to the contract, its contractual rights against iCarpets for fire-related damage would be limited because Revere's contractual rights against iCarpets are limited by the waiver provision.  Because Vehicle Projects may not assert a breach of contract claim against iCarpets for the damage caused by the fire, summary judgment is appropriate on this claim.

In reaching this conclusion, I note that I am not persuaded by Vehicle Projects' reference to iCarpets' expert's testimony that iCarpets should have fixed or repaired the electrical system "for the overall safety of the occupants of the building."  ECF No. 36 at 2 (citing ECF No. 37 at 54:3–9).  The expert's opinion about iCarpets' obligation does not illuminate iCarpets' or Revere's intent with respect to third parties in establishing the lease agreement.  Ultimately, because Vehicle Projects' contractual rights with respect to the damage caused by the fire may not exceed those of the parties to the lease agreement, iCarpets' motion for summary judgment on Vehicle Projects' breach of contract claim is GRANTED.

**B.**    **iCarpets' Motion for Partial Summary Judgment on Vehicle Projects' Measure of Damages [ECF No. 27].**

In iCarpets' second motion for partial summary judgment it seeks a determination of law as to the appropriate measure of Vehicle Projects' damages.  ECF No. 27 at 1.  Vehicle Projects' alleged damages are based on the damage caused by the fire to specialized equipment it was storing in Navis' unit at the time of the fire.  *Id.* at 2.  Vehicle Projects was storing the

components of a fuel cell locomotive engine it had developed and built for Rustenburg Platinum Mines Limited pursuant to a Development Agreement between Rustenburg and Vehicle Projects. *Id.* iCarpets argues that the value of this lost equipment should be measured in terms of the diminution of its market value, which can be determined using the contract price contained in the Development Agreement. *Id.* According to the terms of this contract, the cost to build four locomotive "units" and perform related services would be $500,000. *Id.* at 3. As such, iCarpets argues that the market value of the single locomotive engine (or "unit") damaged by the fire can be determined by the contract price as one-fourth of $500,000, or $150,000 [sic].[2] ECF No. 27 at 4–5.

As a matter of law, iCarpets is correct that the appropriate measure of damages is the property's market value. Though iCarpets finds support for this contention from real property cases (*see, e.g.*, *Bd. of Cnty. Comm'rs v. Slovek*, 723 P.2d 1309, 1314 (Colo. 1986)), the same rule holds for cases involving personal property like the equipment at issue here. In Colorado, "[g]enerally, the measure of damages for injury to personal property is the difference between its market value immediately before and after the injury." *Biosera, Inc. v. Forma Scientific, Inc.*, 941 P.2d 284, 286 (Colo. App. 1996).

While Vehicle Projects does not dispute that market value is the appropriate measure of damages, it does dispute iCarpets' attempt to set the amount of damages as a matter of law, noting that the amount of damages is a question of fact for trial. ECF No. 35 at 1–2 (citing *Ryan v. Mineral Cnty. High Sch. Dist.*, 146 P. 792, 795 (Colo. App. 1915)). Vehicle Projects argues that by asking the Court to enter judgment on the amount of damages at $150,000, iCarpets is

---

[2] Although the proper figure is $125,000, the Court will use iCarpets' $150,000 figure for consistency unless the parties specified otherwise in their briefing.

conflating the question of law about the measure of damages with a disputed question of fact about the amount. *Id.*

I agree with Vehicle Projects that iCarpets' attempt to have the Court determine the market value of the equipment destroyed is inappropriate. iCarpets has failed to show the absence of a genuine issue of fact with respect to its proffered figure of $150,000. Instead, Vehicle Projects has established a genuine dispute over the damages amount, noting that the "cost to build" four locomotive units, as expressed in the Development Agreement, does not necessarily convey the value of each unit. *Id.* at 6. As Vehicle Projects' president and owner, Dr. Miller, points out, the company would not have sold the unit for $125,000 on the open market, as such a price would not reflect the unit's value. ECF No. 35-1 at 4. In other words, Vehicle Projects rejects iCarpets' reliance on the contract price of the unit as opposed to the price it would fetch on the open market. Vehicle Projects instead contends that the real value of a single unit takes into account the previous work that went into developing the technology, despite the fact that Vehicle Projects' client paid these costs according to the terms of the Development Agreement. *Id.* at 5.[3] Moreover, I note that while "the contract price—the product of arms length negotiations between sophisticated market participants" has been deemed "to be an excellent determination of market value," it is not the only determination of market value, and does not preclude alternative calculations. *Eastman Kodak Co. v. Trans Western Exp., Ltd.*, 765 F. Supp. 1484, 1486 (D. Colo. 1991).

Additionally, Dr. Miller's affidavit provides two plausible alternative calculations of the value of the equipment destroyed in the December 2014 fire. ECF No. 35-1 at 3. The first, which results in a value of $372,800 per unit, involves accounting for the amortized cost to

---

[3] Vehicle Projects disputes that it was paid in full for developing the equipment, but its proffered affidavit does not support its contention to the contrary. *See* ECF No. 35 at 3 (citing ECF No. 35-1 at ¶¶ 11–17).

develop the product, the cost to manufacture it, and the profit per unit. *Id.* The second method accounts for the cost of materials for each unit, and it results in a unit value of $269,051. *Id.* iCarpets disputes Vehicle Projects' reliance on Dr. Miller's opinions, as he was not designated as an expert witness, and his opinions were not disclosed or supported by facts or data. ECF No. 39 at 2. It is true that Dr. Miller has not been designated as an expert, so Vehicle Projects may not proffer his opinions at trial as such. *See* ECF Nos. 39-2, 39-3. However, Vehicle Projects has not purported to present Dr. Miller's opinions as those of an expert, but instead indicates that they are those of the owner of the property at issue. *See* ECF No. 35 at 5. Owner opinions as to the value of lost property are considered competent. *See, e.g.*, *Grange Mut. Fire Ins. Co. v. Golden Gas Co.*, 298 P.2d 950, 955 (Colo. 1956) ("Some of the individual plaintiffs testified from their written memoranda as to what they owned that was destroyed by the fire and how they arrived at their final values for loss purposes. This was proper."). As a result, I have considered Dr. Miller's opinion as to the market value of the damaged equipment, and I find that it supports the existence of a genuine fact dispute.

Given the genuine dispute over the amount of damages, it is inappropriate for the Court to decide the amount of damages at this stage. As a result, iCarpets' motion for partial summary judgment is GRANTED insofar as the Court agrees that the correct measure of damages is the difference in the equipment's market value before and after it was damaged, but this motion is DENIED with respect to iCarpets' request to set the amount of damages at $150,000.

### C. Vehicle Projects' Motion for Summary Judgment on Causation and Liability for Negligence [ECF No. 28].

Vehicle Projects moves for summary judgment on the issues of causation and liability for negligence. Vehicle Projects contends that "[t]here is no dispute regarding who or what caused the fire," so "liability and causation can be determined as a matter of law." ECF No. 28 at 2.

Because I find that Vehicle Projects has established the absence of a genuine issue of material fact with respect to causation, summary judgment is appropriate on that issue. However, because liability for negligence relies on a standard of reasonable care, which is a fact issue best resolved by a jury, I must deny summary judgment with respect to liability.

    *i. Causation.*

   With respect to causation, Vehicle Projects contends that iCarpets caused the December 2014 fire when it touched or hit an electrical outlet box on an interior wall in its unit, which moved the box, stripping the wires inside the box and causing a spark. ECF No. 28 at 2. According to Vehicle Projects, this spark ignited the carpets or carpet pads that were stored in close proximity to the wall. *Id.* at 2–3. In support of its theory, Vehicle Projects cites the opinion of iCarpets' expert, Mr. Ritchie, who stated that "it was obvious that movement of material disturbed the outlet and the attached conduit/raceway causing the short and resulting fire." ECF No. 28 at 2 (citing ECF No. 28-2 at 2). Mr. Ritchie further agreed with plaintiffs' expert that an electrical outlet on the wall "was somehow moved and the conduit conductor shorted against the conduit and caused an arcing." ECF No. 28-3 at 3. He also noted that after inspecting the site of the fire, the padding and carpet was "about a foot, maybe 6, 7 inches" away from the wall where the fire started, although he did not "see it in contact with the wall." *Id.* at 6. He emphasized that "what is obvious is something hit that receptacle, okay. I suspect it was done when things were being moved or relocated." *Id.* at 12.

   In its response, iCarpets attempts to undermine Mr. Ritchie's testimony. iCarpets points to its owner's statement that "pretty much" every bale in the warehouse would have been five to ten feet from the walls. ECF No. 34 at 3. However, even if this statement is taken at face value, it does not contradict Mr. Ritchie's finding—based on an in-person investigation of the site of

the fire—that the carpets and padding were in very close proximity to the wall at the location where the electrical outlet was moved and sparked. iCarpets' owner's statement that "pretty much" every bale was relatively far from the walls itself indicates some inconsistency in the spacing and allows for the possibility that some carpets might have been closer to the walls.

iCarpets also disputes Mr. Ritchie's contention that the electrical outlet box was touched or hit, arguing that Mr. Ritchie "relied on conjecture" in reaching his conclusion. *Id.* at 4. However, this argument misstates the expert's deposition testimony. Though Mr. Ritchie alluded to conjecture, it was in the context of "talk about movement of the wall" itself, rather than anything to do with movement of the electrical box. *Id.* at 3. Thus, Mr. Ritchie's unwillingness to accept this "conjecture" about the possibility that the wall itself was loose in fact highlights the strength of his conviction in his testimony that the electrical outlet box was moved. Indeed, with respect to the electric box, the expert asserts that "it is [his] opinion that the box moved." *Id.* iCarpets' additional argument that its owner denies ever hitting a wall and that there is no direct witness evidence of anyone touching the electrical outlet box on the day of the fire is unavailing. The absence of direct evidence is not dispositive, especially when circumstantial evidence overwhelmingly supports iCarpets' expert's finding that the box was hit or moved. *Id.* at 4.

Thus, iCarpets has failed to establish a dispute over the cause of the fire. It has pointed to no alternative theory for how the fire might have started or who might be responsible for the fire other than iCarpets. Instead, it has merely attempt to inject some "metaphysical doubt" into *its own expert's* theory of what started the fire. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The material facts—which iCarpets has failed to call into question—are that *someone* at iCarpets caused something to hit the electrical outlet box, which

caused a spark that ignited the carpet and/or padding.  Because Vehicle Projects has carried its

burden in establishing that iCarpets caused the fire, and iCarpets has failed to demonstrate a

genuine issue of material fact with respect to causation, summary judgment must be granted in

Vehicle Projects' favor on the issue of causation.

ii. *Liability*.

Unlike causation, liability for negligence in this case depends on a finding that iCarpets

did not exercise reasonable care in its conduct at the warehouse, thereby causing the fire.  *See,*

*e.g.*, *Greenberg v. Perkins*, 845 P.2d 530, 533 (Colo. 1993) ("To establish a prima facie case for

negligence, a plaintiff must show a legal duty of care on the defendant's part, breach of that duty,

injury to the plaintiff, and causation, i.e., that the defendant's breach caused the plaintiff's injury.

. . . In the event that a duty of care is found to exist, the standard against which the defendant's

conduct will be measured for purposes of determining whether the duty was breached is whether

the defendant acted as a reasonable person of ordinary prudence would under the same or similar

circumstances.") (citations omitted).  I am not convinced by Vehicle Projects' contention that

"[n]o reasonable juror could conclude . . . anything other than Defendant acted carelessly in

moving carpets in its warehouse around electrical outlets."  ECF No. 42 at 4 n.1.  Instead, I find

that a reasonable juror could conclude that despite the evidence on causation, iCarpets was not

careless in the way it acted within its warehouse, but instead that the chain of events leading to

the fire occurred despite the exercise of reasonable care.

I am not persuaded by Vehicle Projects' invocation of the doctrine of *res ipsa loquitur* to

find iCarpets negligent.  ECF No. 42 at 3–4.  The Tenth Circuit provides that a party's

negligence may be inferred under the doctrine of *res ipsa loquitur* when the opposing party

proves "(1) the event is of a kind which ordinarily does not occur in the absence of someone's

negligence, (2) the accident was caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the accident was not due to any voluntary action or contribution on the part of the plaintiff." *Fed. Ins. Co. v. United States*, 538 F.2d 300, 301–02 (10th Cir. 1976). Because the first question asks whether this sort of event might occur in the absence of negligence, the *res ipsa loquitur* inquiry similarly involves a question of reasonableness about which a reasonable jury could disagree.

Because a reasonable jury could find that iCarpets exercised reasonable care and was not negligent, summary judgment is inappropriate on the issue of liability for negligence.

### D. Vehicle Projects' Motion for Sanctions [ECF No. 29].

Related to its motion for summary judgment, Vehicle Projects moves for sanctions against iCarpets for maintaining its causation defense. Vehicle Projects contends that iCarpets was aware that it had caused the fire as early as January 20, 2015 when its expert Mr. Ritchie concluded as such, but that iCarpets did not reveal Mr. Ritchie's conclusions until his expert report was released in May 2017. ECF No. 29 at 2.

Mr. Ritchie's report stated that "it was obvious that movement of material disturbed the outlet and the attached conduit/raceway causing the short and resulting fire." *Id.* (citing ECF No. 29-1 at 2). Until May 2017, however, iCarpets and its insurer denied that iCarpets had caused the fire or stated that the cause of the fire was unknown on multiple occasions, including: (1) in iCarpets' insurer's response to Vehicle Projects' August 2015 letter requesting that the insurer pay for its damaged equipment, ECF No. 29-3; (2) in iCarpets' June 2016 answer to plaintiffs' complaint; (3) in its September 2016 answer to Vehicle Projects' complaint; and (4) in iCarpets' March 2017 response to Vehicle Projects' requests for admissions. ECF No. 29 at 4–6. Mr. Ritchie testified in a September 2017 deposition that he informed "iCarpets or the counsel that

retained [him]" that he agreed with plaintiffs' expert's opinion "that an arcing event at the box caused the spark and fire" on "the day of that inspection" on January 20, 2015. ECF No. 29-2 at 18–19. Despite Mr. Ritchie's May 2017 report and September 2017 deposition, iCarpets has continued to maintain its causation defense, and has not supplemented its discovery responses to conform with Mr. Ritchie's conclusions.

Vehicle Projects asserts that iCarpets' failure to evaluate and withdraw its causation defense violated C.R.S. § 13-17-102, while its failure to disclose its expert's conclusion or to correct its discovery responses about the cause of the fire violated Federal Rule of Civil Procedure 37. Vehicle Projects argues that it and plaintiffs have been forced to retain counsel and experts to litigate the causation issue in spite of iCarpets' knowledge that it caused the fire. Vehicle Projects thus seeks sanctions against iCarpets in the form of a default judgment in Vehicle Projects' favor and an award of Vehicle Projects' attorneys' fees since the fire. I find that default judgment is not warranted in this situation, but that attorneys' fees related to the causation defense are an appropriate sanction.

   i. *Colo. Rev. Stat. § 13-17-102*.

C.R.S. § 13-17-102 provides that courts shall award "reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." An action lacks substantial justification when it is "substantially frivolous, substantially groundless, or substantially vexatious." C.R.S. § 13-17-102. Vehicle Projects argues that iCarpets' causation defense is frivolous, groundless, and vexatious. ECF No. 29 at 9. As such, Vehicle Projects seeks attorneys' fees "incurred in litigating this matter and for all pre-litigation activities," arguing that without iCarpets' causation defense there would be "nothing to litigate or argue over other than damages." *Id.*

iCarpets counters that Federal Rule of Civil Procedure 11(c) preempts C.R.S. § 13-17-102 because the latter is inconsistent with the procedural safe harbor provisions in Rule 11. ECF No. 33 at 2. Rule 11(c)(2) requires that a party seeking sanctions for a violation of Rule 11(b) serve its motion on the opposing party twenty-one days before filing it, thereby providing the opposing party "a safe harbor during which time she could have dismissed her case without fear of sanctions under Rule 11." *Kazazian v. Emergency Serv. Physicians, P.C.*, 300 F.R.D. 672, 676–77 (D. Colo. 2014). Unlike Rule 11, section 13-17-102 contains no safe harbor provision. *Id.* at 677. In this case Vehicle Projects failed to serve a copy of its motion for sanctions on iCarpets at all, let alone twenty-one days before filing that motion. *See* ECF No. 41 at 3. Instead, Vehicle Projects merely warned iCarpets' counsel about the imminent motion via email and proceeded to file it fifteen days later. *Id.* As such, if Rule 11 preempts § 13-17-102, Vehicle Projects' claim for sanctions under the state statute must be denied for failure to comply with the Rule 11 safe harbor provision.

iCarpets' argument presents an *Erie* question in which the Court must determine whether a state statute collides with a federal procedural rule. *Kazazian*, 300 F.R.D. at 677. When a federal rule "'cause[s] a direct collision with the state law'" or implicitly "'control[s] the issue before the court,'" the court "'must apply the Federal Rule.'" *See id.* (quoting *Trierweiler v. Crozton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996)). "Courts in this district have found Rule 11's safe harbor provision to be in direct conflict with § 13-17-102." *Id*. at 678. The conflict arises because although "[b]oth Rule 11 and § 13-17-102 allow sanctions against a party who has brought frivolous or groundless claims," the Colorado statute contains no safe harbor provision like that in Rule 11. *Id.* at 677. The lack of a safe harbor provision in the Colorado statute creates "a true conflict" between Rule 11 and the state statute, so the federal

rule must apply. *Id.* at 678. As a result, because Vehicle Projects has failed to comply with the requirements of Rule 11(c), its motion for sanctions under C.R.S. § 13-17-102 is denied.[4] *See id.*

### ii. *Federal Rule of Civil Procedure 37.*

Vehicle Projects also argues that iCarpets should be sanctioned according to Federal Rule of Civil Procedure 37(c)(1) for failing to disclose Mr. Ritchie's conclusion about the cause of the fire. ECF No. 29 at 9. Rule 37 (c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e),"[5] that party is prohibited from presenting evidence related to that information or witness at trial. "This sanction is mandatory unless the non-disclosing party shows substantial justification or that the failure to disclose was harmless." *Cook v. Rockwell*, 233 F.R.D. 598, 600 (D. Colo. 2005). Alternatively, the Court may sanction the non-disclosing party by ordering "payment of the reasonable expenses, including attorney's fees, caused by the failure," informing the jury of the failure, or by ordering any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi). These Rule 37(b) sanctions include "rendering a default judgment against the disobedient party," which is the remedy Vehicle Projects seeks here.

---

[4] I note that iCarpets also asserts that Vehicle Projects did not comply with the local rule, D.C.Colo.LR 7.1(a) requiring conferral before the filing of non-dispositive motions. Vehicle Projects did certify that it had complied with the rule. *See* ECF No. 29 at 1. However, its method of compliance apparently was sending emails. *See* ECF No. 29-4. In the future the Court notes that "confer" means to talk to opposing counsel. I also note that the length of the motion does not conform to this Court's practice standards.

[5] As relevant here, Rule 26(a) requires that a party disclose the identity of its expert witnesses and provide the expert's written report at least 90 days before trial. Fed. R. Civ. P. 26(a)(2). Rule 26(e) in turn mandates that a party who has made a Rule 26 disclosure or who has responded to an interrogatory, request for production, or request for admission:

> supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

*Id.* at 26(e).

iCarpets has failed to respond to Vehicle Projects' arguments on the subject, waiving any argument it might have against Rule 37 sanctions. *See, e.g.*, *Steak n Shake Enters., Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1082 (D. Colo. 2015). Even if iCarpets had responded to this argument, however, I agree with Vehicle Projects that iCarpets violated Rule 26(e) by failing to supplement its discovery disclosures and responses to reflect Mr. Ritchie's conclusions about causation. Moreover, iCarpets has no substantial justification for its failure to supplement its discovery.

iCarpets' March 31, 2017 response to Vehicle Projects' request for admissions includes the statements that "[n]o expert has conclusively identified the cause of the incident;" "[t]here has been no determination that carpet or carpet padding material was in close enough proximity to an electrical outlet to be ignited by the electrical system;" and "no electrical outlet within the property, to iCarpets' knowledge, was damaged by iCarpets or one of its employees by striking with carpet padding materials." ECF No. 29 at 5.

Mr. Ritchie's conclusions in January 2015, which he reiterated in May 2017, contradict iCarpets' responses. He noted in his September 2017 deposition that after inspecting the site of the fire in 2015, he found that the padding and carpet was "about a foot, maybe 6, 7 inches" away from the wall where the fire started, and that "what is obvious is something hit that receptacle, okay. I suspect it was done when things were being moved or relocated." ECF No. 28-3 at 6, 12. Mr. Ritchie testified that he informed iCarpets or the counsel who retained him of his conclusions in 2015. ECF No. 29-2 at 7–10, 18–19. If iCarpets was aware of his conclusions, its responses to Vehicle Projects' request for admissions were false or incomplete at the time they were made.

iCarpets' counsel disputed that Mr. Ritchie communicated his conclusions in 2015, albeit with the caveat that "neither Defendant nor undersigned counsel will elaborate on the substance or timing of conversations related to the cause of fire or liability in this Motion." *See* ECF No. 33 at 4, 4 n.1. iCarpets' counsel also posited that Mr. Ritchie's statement that he had communicated his findings in 2015 was the result of "his recollection" being "faulty," and that iCarpets' counsel was not hired until May 2016, so they could not have known about his conclusions at an earlier date. ECF No. 41-1 at 2. Although it is unclear when iCarpets and its counsel—as opposed to iCarpets' insurer and its counsel—knew of Mr. Ritchie's conclusions on causation, it strains credulity to believe that neither iCarpets nor its counsel was aware of its expert's conclusions about the cause of the fire for two years until his report in 2017. Regardless, by May 2017 when Mr. Ritchie's report was released, iCarpets and its counsel were on notice of his conclusions. At this point, at the very least, iCarpets was obligated under Rule 26(e) to amend or revise its responses to Vehicle Projects' discovery requests. As such, its failure to amend its responses constituted a violation of Rule 37, for which sanctions are appropriate.

As noted, Vehicle Projects seeks a default judgment for iCarpets' Rule 37 violation. A court may enter a default judgment against a party who provides evasive or incomplete disclosures or fails to supplement an earlier response, as is alleged here. *Tom v. S.B., Inc.*, 280 F.R.D. 603, 610 (D.N.M. 2012). However, "because default judgment is a severe sanction, the party's failure must be the result of 'willfulness, bad faith, or some fault of the party,' rather than the inability to comply." *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) (citations omitted). Additionally, the Tenth Circuit has noted that with respect to trial court dismissals and defaults, "we have been . . . reluctant to affirm on the basis of isolated

instances of noncompliance." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1988).

In addition to being generally reluctant to grant dispositive sanctions in situations like the one at hand, the Tenth Circuit grants default judgments and dismissals far less frequently for violations of Rule 37(c)—the provision at issue here—than for violations of Rule 37(b). *Tom*, 280 F.R.D. at 611. The *Tom* court has explained the difference in treatment for the two rules by noting that whereas Rule 37(b) penalizes outright "disobedience," or "the failure to follow specific instructions from the court," Rule 37(c) is focused on general "misbehavior, which is breaking general rules which apply equally to all." *Id.* The court explained that "this circuit often finds that the failure to comply with general discovery rules, even if frustrating, rarely reaches the level of willfulness or bad faith required for such a harsh sanction." *Id.* Nonetheless, "default judgments are permissible for mere 'misbehavior.'" *Id.* (citing Fed. R. Civ. P. 37(c)(1)(C) & (d)(3)).

The Tenth Circuit uses a five-part test to determine whether a party's failure rises to the level of "willfulness" necessary to justify a default judgment. *Tom*, 280 F.R.D. at 610. The five elements are:

> (1) the degree of actual prejudice to the litigant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

*Id.*, citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992). I will assess the five *Ehrenhaus* factors to determine whether iCarpets' violation was willful and merits default judgment.

First, with respect to the degree of actual prejudice to Vehicle Projects, Vehicle Projects argues that if it had known about Mr. Ritchie's findings on causation, "this case would likely

have either been unnecessary or much smaller (and less expensive)." ECF No. 29 at 12. While I do not agree that the case would have been unnecessary, since Vehicle Projects also litigated breach of contract and must still prove negligence, I agree that the case would have been smaller and less expensive. A concession on the issue of causation would have eliminated discovery and litigation on that significant issue. However, Vehicle Projects' loss of time and expense in litigating the causation issue can largely be remedied financially.

Second, with respect to the amount of interference with the judicial process, Vehicle Projects contends that iCarpets' failure to provide information on the causation defense "renders meaningless the pleadings and discovery process." *Id.* at 12–13. As with the first factor, it argues that the case would have been litigated very differently or would not have even been brought. *Id.* Again, while Vehicle Projects is correct that the litigation strategy would have been different if iCarpets had provided the causation information, that fact does not render meaningless the remainder of the pleadings or discovery on issues other than causation. Moreover, unlike in cases involving direct refusals to comply with court orders, thereby "flout[ing] the court's authority," iCarpets did not violate a judicial order in this matter. *Cf. Ehrenhaus*, 965 F.2d at 921.

Third, regarding the culpability of the litigant, Vehicle Projects argues that iCarpets was "either withholding" the causation information "or was so negligent in its preparation of its defense that it forgot to ask its own expert whether the causation defense had any merit." ECF No. 29 at 13. It notes that the insertion of new counsel in May 2016 is no excuse for iCarpets' asserting a frivolous defense. *Id.* I agree that iCarpets was responsible for ensuring that its defenses were valid and its discovery responses complete, and that its failure to amend its discovery responses to comport with its expert's findings indicate that it is culpable.

Fourth, the Court in this case has provided no warning to iCarpets that its action might be dismissed. In *Ehrenhaus*, in contrast, the judge had invited the defense counsel to file a motion to dismiss if the plaintiff failed to attend a deposition, thereby giving the plaintiff fair warning. 965 F.2d at 921. The lack of notice thus distinguishes this case. While it may be the case that iCarpets should have known that its failure to correct its causation defense carried the risk of default judgment, I am not satisfied that this is enough to justify such an extreme outcome.

Finally, I note that lesser sanctions would be effective in this situation. Vehicle Projects argues that a lesser sanction would "essentially condone Defendant's conduct" and "serve little purpose absent a complete re-do of the case paid for by Defendant." ECF No. 29 at 14. I disagree. With appropriate attorneys' fees and limits on its ability to present certain information at trial, iCarpets' failure to change its discovery responses will be properly penalized.

Although I do not by any means condone iCarpets' two-year delay in revealing its expert's findings on causation, I find that on balance the *Ehrenhaus* factors indicate that a default judgment is not justified in this case. Instead, lesser sanctions are sufficient to penalize iCarpets' violation of Rule 26 and ensure that it does not benefit from its violation at trial. As a result, Vehicle Projects' motion for default judgment is DENIED. Alternatively, I impose the following sanctions on iCarpets:

1. I order iCarpets to pay 100% of Vehicle Projects' reasonable costs and fees associated with the discovery and litigation of the causation defense and this motion.

2. Should this case go to trial, Vehicle Projects may inform the jury that Mr. Ritchie's report and conclusion on causation were withheld in violation of discovery rules.

3. I grant Vehicle Projects' demand to preclude any evidence that anyone other than iCarpets caused the fire.

**ORDER**

For the reasons stated herein, iCarpets' motion for partial summary judgment on the breach of contract claim is GRANTED; its motion for partial summary judgment with respect to measure of damages is GRANTED with respect to setting the measure of damages but DENIED with respect to setting the amount; Vehicle Projects' motion for summary judgment is GRANTED with respect to causation but DENIED with respect to liability; and its motion for sanctions is GRANTED insofar as iCarpets is ordered to pay attorneys' fees for its causation defense, but DENIED with respect to Vehicle Projects' request for a default judgment.

DATED this 21st day of December, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge